ADAM FEE (Bar No. 345075)
adam.fee@weil.com
BEN NICHOLSON (Bar No. 317970)
ben.nicholson@weil.com
WEIL, GOTSHAL & MANGES LLP
1999 Avenue of the Stars, Suite 1800
Los Angeles, CA 90067
Telephone: (213) 667-5100

Attorneys for ABRAHAM SHAFI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

UNITED STATES OF AMERICA,

v.

ABRAHAM SHAFI,

Defendant.

Case No. 25-CR-00258-YGR

**ABRAHAM SHAFI'S OPPOSITION TO THE UNITED STATES' EX PARTE APPLICATION FOR PERMISSION TO NOT DISCLOSE MATERIALS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..... 7

BACKGROUND ..... 9

ARGUMENT ..... 10

I. The Court Should Not Decide a Contested Motion on a Filing Shafi Cannot Read ..... 10

II. The Government Made False Statements to the Court, Changed Its Account Repeatedly, and Has Corrected Nothing ..... 13

III. The Government Cannot Argue from the Records *and* Hide Them ..... 17

IV. No Privilege the Government Has Named Covers Records of a Screen ..... 19

V. The Government's "No Prejudice" Argument Is Wrong on the Law and Wrong on the Facts ..... 22

VI. Process Matters ..... 26

VII. Requests ..... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berger v. United States*,
295 U.S. 78 (1935) ..... 26

*Bittaker v. Woodford*,
331 F.3d 715 (9th Cir. 2003) ..... 18

*Chevron Corp. v. Pennzoil Co.*,
974 F.2d 1156 (9th Cir. 1992) ..... 18

*Clarke v. Am. Commerce Nat'l Bank*,
974 F.2d 127 (9th Cir. 1992) ..... 13

*In re Complex Asbestos Litig.*,
232 Cal. App. 3d 572 (1991) ..... 20

*Dennis v. United States*,
384 U.S. 855 (1966) ..... 11

*Epic Games, Inc. v. Apple Inc.*,
781 F. Supp. 3d 943 (N.D. Cal. 2025) ..... 15

*FTC v. Warner Commc'ns Inc.*,
742 F.2d 1156 (9th Cir. 1984) ..... 21

*Greer v. County of San Diego*,
127 F.4th 1216 (9th Cir. 2025) ..... 19

*Hernandez v. Tanninen*,
604 F.3d 1095 (9th Cir. 2010) ..... 18

*Kirk* v. *First Am. Title Ins. Co.*,
183 Cal. App. 4th 776 (2010) ..... 20

*Lynn v. Regents of Univ. of Cal.*,
656 F.2d 1337 (9th Cir. 1981) ..... 11

*Marshall v. Jerrico, Inc.*,
446 U.S. 238 (1980) .......... 23
*In re Sealed Case*,
121 F.3d 729 (D.C. Cir. 1997) .......... 21
*SVF II Aggregator (DE) LLC v. Shafi*,
No. 4:23-cv-03834-YGR .......... 25
*United States v. Budziak*,
697 F.3d 1105 (9th Cir. 2012) .......... 16-17
*United States v. Chapman*,
524 F.3d 1073 (9th Cir. 2008) .......... 26
*United States v. Fernandez*,
231 F.3d 1240 (9th Cir. 2000) .......... 20-21
*United States v. Fieger*,
2008 WL 205244 (E.D. Mich. Jan. 24, 2008) .......... *8,* 11, 20-22, 24, 27
*United States v. Gamez-Orduno*,
235 F.3d 453 (9th Cir. 2000) .......... 17
*United States v. Gardner*,
611 F.2d 770 (9th Cir. 1980) .......... 12
*United States v. Harmon*,
833 F.3d 1199 (9th Cir. 2016) .......... 12
*United States v. Kohring*,
637 F.3d 895 (9th Cir. 2011) .......... 22
*United States v. Kojayan*,
8 F.3d 1315 (9th Cir. 1993) .......... 26
*United States v. Martin*,
278 F.3d 988 (9th Cir. 2002) .......... 19
*United States v. Miller*,
953 F.3d 1095 (9th Cir. 2020) .......... 24, 27

*United States v. Minkkinen*,
2023 WL 3587757 (S.D. W. Va. May 22, 2023) ... 27
*United States v. Nixon*,
418 U.S. 683 (1974) ... 21
*United States v. Richey*,
632 F.3d 559 (9th Cir. 2011) ... 22
*United States v. Sanmina Corp.*,
968 F.3d 1107 (9th Cir. 2020) ... 18
*United States v. Soto-Zuniga*,
837 F.3d 992 (9th Cir. 2016) ... 16-17
*United States v. Thompson*,
827 F.2d 1254 (9th Cir. 1987) ... 11
*United States v. Williams*,
68 F.4th 564 (9th Cir. 2023) ... 23
*Upjohn Co. v. United States*,
449 U.S. 383 (1981) ... 19
*Young v. United States ex rel. Vuitton et Fils S.A.*,
481 U.S. 787 (1987) ... 23

**Statutes**

28 U.S.C. § 530B(a) ... 7, 15
Cal. Bus. & Prof. Code § 6068(d) ... 15

**Other Authorities**

5 C.F.R. § 2635.402 ... 23
5 C.F.R. § 2635.502 ... 20, 23
Cal. R. Prof. Conduct 1.0.1(k) ... 20
California Rule of Professional Conduct 1.11(d) ... 7, 22-23
California Rule of Professional Conduct 3.3(a)(1) ... 15
Fed. R. Crim. P. 16 ... *passim*

L.R. 47-3(a)........................................................................................................12-13

## INTRODUCTION

The government asks the Court to decide, in an *ex parte* filing Shafi cannot read, that he may not see the records of how the United States Attorney's Office (the "Office") handled Attorney-1's conflict.[1] It asks this after telling the Court things about that conflict that its own documents show were false. The Court should deny the request and order the records produced before the October 5 hearing.

The government filed its application for permission to withhold documents (the "Application") *ex parte* and under seal on September 22, two days before the hearing then set on Shafi's Motion to Dismiss. *See* ECF 89. It served a redacted copy on Shafi the next afternoon, after Shafi had asked for it twice, with seven of its sixteen pages blacked out in full. *See* Ex. A. The government did not publicly file the redacted version of the Application. The Application argues the merits of the Motion to Dismiss from documents the defense has never seen, and it asks the Court to keep it that way.

Attorney-1 represented the alleged victim in this case and urged the government to pursue Shafi. *See* ECF 64 (Shafi's MTD) at 8-9, 12-13.[2] She joined the Office in December 2023 and became a section chief the next month. ECF 80 (AUSA-1 Decl.) ¶ 6. For the next eight months she supervised one of the two line prosecutors on this case. ECF 80 ¶ 7. Within a month of arriving, she emailed the case team about the investigation. ECF 79, Ex. 6. Within eleven weeks she discussed adding a prosecutor to the team "to help move it along." ECF 79, Ex. 7.

California Rule of Professional Conduct 1.11(d) barred all of it, and 28 U.S.C. § 530B(a) binds every prosecutor in the Office to that Rule. The government says that none of this was "substantive" and that no one was prejudiced. ECF 79 at 7, 17; ECF 89 at 3, 7.

[1] This brief uses the same identifiers as used in the briefing on Shafi's Motion to Dismiss the Indictment (ECF 64). Attorney-1 is the former Chief of the Office's Corporate and Securities Fraud Section; AUSA-1 is the line prosecutor she supervised; AUSA-2 is the prosecutor Attorney-1 asked to add to the investigation team; the Branch Chief supervised the investigation until August 2024. *See* ECF 64, 83. In addition, EAUSA-1 refers to the Executive Assistant United States Attorney who the government says "provided [Attorney-1] with a 'walling off' memo," Ex. D at 2.

[2] Pincites refer to ECF page numbers, which aligns with the PDF page numbers.

"Substantive" is not the test. But the contact *was* substantive and the prejudice plain. Shafi lost what the Constitution promises every defendant: a prosecution decided by people with no stake in the outcome.

The government has also told the Court things that are not true. On June 11, it said AUSA-1 was moved out from under Attorney-1 "[w]hen [Attorney-1] joined the office," that Attorney-1 had "no involvement whatsoever" in the investigation, that she "was not discussing this matter," and that "[t]here was an ethical wall placed around" her. ECF 60 at 5:6-13. But AUSA-1's own sworn declaration dates her transfer eight months *after* Attorney-1 joined. ECF 80 ¶ 7. And the government's own exhibits show Attorney-1 discussing the matter with the case team three times. ECF 79, Exs. 6-8. Its own witnesses could not describe the wall. *See* ECF 83-3 (Attorney-1 interview memorandum) at 2; ECF 83-4 (Branch Chief interview memorandum) at 2. And its own letter dates the memorandum that supposedly built the wall two months *after* Attorney-1 joined the Office. Ex. D at 2.

Whether those statements were careless or something worse, we do not know. But we know they were false. We know the documents proving it were in the Office's files when the statements were made. And we know the government has not withdrawn a word.

The government now asks the Court to accept its description of records it is still hiding. The Office should not be allowed to wave away Attorney-1's misconduct with one hand and, with the other, hold back the records of what it knew about that misconduct, when it knew, and what it did.

Only one court we have found has ruled on whether the government may keep the facts of a United States Attorney's Office recusal from a defendant. It ordered them disclosed. In *United States v. Fieger*, the Department gave the court the reason for a recusal *ex parte*, citing Rule 16(a)(2), the deliberative process privilege, and the attorney-client privilege. 2008 WL 205244 (E.D. Mich. Jan. 24, 2008). Those are three of the four grounds the government invokes here. The court held that none of them protected the reason for the recusal, that the Department's purported policy of not disclosing recusal reasons was not a legal basis to withhold it, and that the government must tell the defense within seven days

why its officials had recused. *Id.* at *12-16.

Here the reason is known. Attorney-1 represented the alleged victim. But the government is withholding the record of what the Office did about that conflict, and that record contains facts the government has misstated to the Court: when the screen went up, who imposed it, and whether it held. The government says the records are “unhelpful” to Shafi and “undercut” his theory. ECF 89 at 6. Shafi should be allowed to read them and say whether that is so

**BACKGROUND**

The Application presents Shafi’s requests as having been made in a September 10, 2026 email. ECF 89 at 3 n.2. That is misleading. Shafi’s requests are older, and the conflict they concern is older still.

Shafi’s prior counsel raised Attorney-1’s conflict in writing, on May 16, 2024, with EAUSA-1, the Criminal Chief, and the Branch Chief supervising this investigation. ECF 64, Ex. O at 1. The letter asked whether recusing Attorney-1 alone was “sufficient to guard against conflict of interest and appearance of impartiality concerns, or whether recusal of the U.S. Attorney’s Office itself may be required,” and asked the Office to “investigate this situation.” *Id.* at 2, 5. Twelve weeks later, in two paragraphs, the Office said recusal was “not required,” and the Office had taken “additional steps beyond the recusal” of Attorney-1. ECF 64, Ex. P at 2. The letter did not say that Attorney-1 had already written to the case team three times about the case, or that the Branch Chief had already told her to stop in writing. The Office knew both things. *See* ECF 79, Exs. 6-8.

In April 2026, we asked the United States Attorney to meet. Ex. B at 3. We met with him in May, asked him to dismiss the case because of the conflict, and followed up in writing on May 26. *Id.* at 1-2. On June 11 we previewed Shafi’s motion to dismiss in open court. *See* ECF 60. We filed it on July 20. *See* ECF 64.

On August 21, four days after the government filed its opposition and three Attorney-1 emails, Shafi requested the government produce certain screening materials. Ex. C at 15-16. Shafi’s counsel asked for “any screening memo, instruction, acknowledgment,

or briefing record," Attorney-1's recusal and separation paperwork, the records of AUSA-1's reassignment and of the second line prosecutor's assignment, the case tracker, and all of Attorney-1's communications about this investigation. *Id*. We repeated the requests on August 28, September 10, and September 16. *Id*. at 4-6, 8-12.

The government answered that the records are "privileged and internal work product." Ex. C at 11, 14. It served no privilege log and cited no authority. On September 14, it wrote that it would produce nothing "absent a Court order." *Id.* at 7-8.

On the afternoon of September 21, three days before the scheduled hearing, the government disclosed for the first time that "in or about February 2024, [EAUSA-1] provided [Attorney-1] with a 'walling off' memo." Ex. D at 2. The government said that the Office had consulted "with DOJ's General Counsel ('GCO')" "after receiving the letter from" Shafi's prior counsel. Ex. D at 2.

The government's letter asked the defense to stipulate to a continuance of "a couple of weeks," because it could not "effectively argue" Shafi's Motion to Dismiss until "the discovery question" was resolved. Ex. C at 4. We declined and asked the government to bring the "walling off memo" to the hearing. Ex. F at 2. The government filed the Application the next day, *ex parte* and under seal. ECF 89 at 3 n.4. The Court then continued the hearing. *See* ECF 92.

The government has had the "walling off memo" since February 2024 and has known since August 21 that Shafi wanted it. Nothing stopped it from producing it, logging it, or seeking a protective order in August. It waited until the eve of the hearing, and the hearing it had asked us to postpone was postponed. Trial begins March 1, 2027. Every week spent litigating what should have been produced in August comes out of the defense's preparation for trial.

## ARGUMENT

### I. The Court Should Not Decide a Contested Motion on a Filing Shafi Cannot Read

Shafi does not object to the Court reading the withheld documents *in camera*. That is

an ordinary way to test a privilege claim, and it does not waive the privilege. But the Application asks for more. It asks the Court to receive the government's legal argument in secret, without a log, and to rule that the documents are "not subject to discovery under Rule 16, *Brady* and related cases, or any other applicable rule of discovery." ECF 89 at 3. And it argues the merits. It tells the Court that the documents "undercut Shafi's theory" and "support finding that Attorney-1 did not engage in the substance of the IRL investigation." *Id*. at 3, 6. The government has effectively filed a supplemental brief against Shafi's Motion to Dismiss that Shafi cannot read or answer.

"[S]ituations where the court acts with the benefit of only one side's presentation are uneasy compromises with some overriding necessity, such as the need to act quickly or to keep sensitive information from the opposing party. Absent such compelling justification, ex parte proceedings are anathema in our system of justice and, in the context of a criminal trial, may amount to a denial of due process." *United States v. Thompson*, 827 F.2d 1254, 1258-59 (9th Cir. 1987). The Ninth Circuit has reversed a judgment for the defendants where the district court had received the plaintiff's tenure file *in camera* and used it "to make factual determinations or to evaluate other evidence." *Lynn v. Regents of Univ. of Cal*., 656 F.2d 1337, 1346 (9th Cir. 1981).

"[T]he system functions properly and leads to fair and accurate resolutions, only when vigorous and informed argument is possible. Such argument is not possible, however, without disclosure to the parties of the evidence submitted to the court." *Id.* "In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate." *Dennis v. United States*, 384 U.S. 855, 875 (1966).

The one court we have found to have considered whether recusal records must be produced to the defense ordered disclosure. In *Fieger*, the top three officials of the Detroit United States Attorney's Office recused seven months into a criminal investigation, at the Department's direction, and the Department would not say why. 2008 WL 205244, at *5-6. It disclosed the reason to the court *ex parte* and *in camera*, under a claimed Department

policy against public disclosure, and then asked for the papers back. *Id.* at *8. Judge Borman refused. He explained the submission "becomes part of the record" and "does not revert back to the party that submitted it and disappear." *Id*. The Department's "policy of not revealing that issue publicly" was "not a legal basis for the Court to foreclose disclosure of the reason for the recusals to Defendants." *Id.* at *12. The court found Rule 16(a)(2) of the Federal Rules of Criminal Procedure, the deliberative process privilege, and the attorney-client privilege did not protect the information, and ordered the government to tell the defense within seven days why its officials had recused. *Id.* at *12-15.

The government's own authority does not support what it did here. In *Harmon,* the government submitted impeachment material about a paid informant for *in camera* review, asserting that disclosure would "endanger" him. *United States v. Harmon*, 833 F.3d 1199, 1202-05 (9th Cir. 2016). The Ninth Circuit permitted the process because the government had "legitimate reasons for protecting the confidentiality of the material requested." *Id*. at 1205 (quoting *United States v. Dupuy*, 760 F.2d 1492, 1501 (9th Cir. 1985)). In *Gardner*, the government submitted documents *in camera* so the court could decide whether they should be produced in response to a "general request for exculpatory evidence." *United States v. Gardner*, 611 F.2d 770, 774-75 (9th Cir. 1980). In neither case did the government brief the judge in secret on a pending merits motion, or tell the court the documents were "unhelpful" to the defense while withholding them.

Here, no informant is at risk. No investigation is pending. The confidentiality the government seeks to protect is its own.

The Application also went to the wrong judge. This Court referred discovery matters in this case to Magistrate Judge Krishnan. *See* ECF 67. The government asked for an order that documents are "not subject to discovery." ECF 89 at 3. That is a discovery matter. The government brought it here instead, to the judge deciding Shafi's Motion to Dismiss, and used it to argue that motion.[3]

[3] The Application also took the wrong form. Per local rules, an *ex parte* motion in a criminal case must fit within five pages, cite "the rule or order which permits use of an ex parte motion to obtain the relief sought," and be supported by declarations "setting forth specific facts which support granting the requested relief without notice." Crim. L.R. 47-

Nor has the government carried its burden. The party asserting a privilege must establish each element document by document, and "blanket assertions of the privilege are extremely disfavored." *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992) (citation and quotation marks omitted). The way to carry that burden is a privilege log. The government has refused to serve one, on the ground that no rule requires it "absent a Court order." Ex. C at 7, 8 (Sept. 14 email). Without a log, the Court is asked to find a privilege for documents the defense cannot identify, and Shafi is asked to oppose an argument he cannot see.

Pages 9 through 15 of the Application served on Shafi are blank, and so are portions of pages 2 and 4. Ex. A. The government said it would redact "the substance of the documents." ECF 89 at 3 n.3. It redacted more than that. No privilege covers the dates, authors, and recipients of documents; that is what a log contains. And the government blacked out its own arguments about the documents, not just the documents' contents. Whatever is on those seven pages, the defense is deprived of an opportunity to answer it.

## II. The Government Made False Statements to the Court, Changed Its Account Repeatedly, and Has Corrected Nothing

The government asks the Court to take its word about what the withheld records show. The Court has taken its word before. When the defense first previewed the conflict motion in open court on June 11, 2026, the Court asked whether the government had "investigated this issue." ECF 60 at 4:25-5:23. AUSA Mateer answered, "We have," and gave the account in the left column below. *Id*. The government repeated and expanded that account in its opposition to the Motion to Dismiss. *See* ECF 79. The right column is what the government's own documents show.

---

3(a). The Application runs sixteen pages. *See* ECF 89. And the portion available to Shafi cites no rule permitting *ex parte* relief and attaches no declaration. *See* Ex. A.

| What the government told the Court | What the government's own documents show |
|---|---|
| "When [Attorney-1] joined the office, my co-counsel, [AUSA-1], was moved to the special prosecutions unit." ECF 60 at 5:6-8. | AUSA-1 transferred out of Attorney-1's section "[i]n or around August 2024," eight months after Attorney-1 joined, and only "after Shafi complained." ECF 80 ¶ 7; ECF 79 at 6, 20. The opposition concedes that Attorney-1 "did initially supervise AUSA 1." ECF 79 at 15. |
| "[Attorney-1] had no involvement whatsoever in the investigation by the office or the decision to charge." ECF 60 at 5:10-11. "[Attorney-1] was not discussing this matter, had no involvement in the matter." *Id.* at 5:12-13. The case team "never had substantive conversations with her regarding the case." ECF 79 at 17. | January 3, 2024: Attorney-1 sent the case team a Financial Times article asking "was IRL the next Facebook or a fraud?" ECF 79, Ex. 6.<br><br>January 8, 2024: Attorney-1 asked AUSA-1 to identify the FBI agents on the case, volunteering that the lead agent "seemed very good," and received their names and an assessment of each within a minute. *Id.*, Ex. 8.<br><br>February 20, 2024: Attorney-1 asked the Branch Chief to "add [AUSA-2] to the IRL team to help move it along." *Id.*, Ex. 7.<br><br>Attorney-1 kept the Shafi investigation on her case tracker. *See* ECF 83-3 at 2.<br><br>Attorney-1 supervised AUSA-1 for eight months. ECF 80 ¶ 7. |
| "There was an ethical wall placed around [Attorney-1]." ECF 60 at 5:12. The Office "recused Attorney 1 from the matter immediately"; she "was recused from the matter from the date she joined the Office." ECF 79 at 6, 16. | The Branch Chief admonished Attorney-1 in writing on February 21, 2024, after she had sent her third email about the case: "you shouldn't be talking to anyone about this case within the office. Have you gotten an ethics briefing from [EAUSA-1]?" Attorney-1 replied that she did not think she had received "a formal briefing from [EAUSA-1]." ECF 79, Ex. 7.<br><br>In July 2026 Attorney-1 [redacted] ECF 83-3 at 2, and the Branch Chief [redacted] ECF 83-4 at 2.<br><br>The government now dates the "walling off memo" "in or about February 2024," more than two months after Attorney-1 joined the Office. Ex. D at 2. |

| What the government told the Court | What the government's own documents show |
|---|---|
| "Have you investigated this issue?" "We have, Your Honor." ECF 60 at 4:25-5:2. | The government's first interviews of Attorney-1 and the Branch Chief took place on July 16 and 17, 2026, five weeks after that answer. ECF 83-3 at 1; ECF 83-4 at 1.<br><br>The three emails Attorney-1 sent about the Shafi case had been in the Office's files since January and February 2024. *See* ECF 79, Exs. 6-8. The government did not mention them on June 11. *See* ECF 60. It filed them under seal on August 17. *See* ECF 79. |

The statements about AUSA-1's transfer, Attorney-1's involvement, and what Attorney-1 was discussing were false when made. The rest of the government's statements listed above were misleading. Whether the lawyers who made them knew what the Office's files held, we do not know. The files held the proof. The emails in the right column had been there for more than two years. The government did not mention them until it filed them under seal on August 17, after Shafi's Motion to Dismiss left it no choice. And the government has corrected nothing. Neither its opposition nor the unredacted portions of its Application withdraw a word of its June 11 account.

When we pointed out these contradictions, the government answered that it "is not relying upon any statement by either [Attorney-1] or [the Branch Chief]." Ex. C at 7 (Sept. 14 email). That disclaims reliance. It does not correct the record. California Rule of Professional Conduct 3.3(a)(1) forbids a lawyer from "knowingly mak[ing] a false statement of fact or law to a tribunal or fail[ing] to correct a false statement of material fact or law previously made to the tribunal by the lawyer." *See also* Cal. Bus. & Prof. Code § 6068(d) (requiring attorneys "never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law."); 28 U.S.C. § 530B(a) ("An attorney for the Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties."). The government's duty to correct has been running since August 17.

This Court has held a party to false statements it declined to withdraw. *Epic Games, Inc. v. Apple Inc.,* 781 F. Supp. 3d 943, 968 (N.D. Cal. 2025) (party that "did not seek to

withdraw the testimony or to have it stricken" was "held to have adopted the lies and misrepresentations to this Court"). The same rule should apply to the government.

The government also cannot keep its account straight from one filing to the next. On the issue of when AUSA-1 was moved out from under Attorney-1's supervision, it has given three answers: "[w]hen [Attorney-1] joined the office," ECF 60 at 5:6-8; "[i]n or around August 2024," ECF 80 ¶ 7; and "after Shafi complained [in May 2024]," ECF 79 at 20. On the issue of when supervision left the Office, its opposition said August 2024 on one page, ECF 79 at 6, and April 2024 on another, ECF 79 at 20, and its own August 8, 2024 letter says, in the future tense, supervision "will lie" with the Fraud Section. ECF 64, Ex. P. On the issue of when Attorney-1 left the government, the opposition and declaration say March 2025, ECF 79 at 17; ECF 80 ¶ 8, and the Application says February 2025. ECF 89 at 7. On the issue of whether the withheld records matter, the government wrote on September 14 that "there is no dispute as to any material fact" and on September 21 that it could not "effectively argue this motion" until the discovery question was resolved. Ex. C at 4, 7. On the issue of whether it relies on its witnesses, it disclaimed relying on statements made to the government by Attorney-1 and Branch Chief while its opposition cites the Branch Chief's email for the proposition that "the supervisor refused to discuss the case with Attorney 1." ECF 79 at 25.

The government's newest account of the screening raises additional questions. The government says EAUSA-1 gave Attorney-1 a "walling off memo" "in or about February 2024." Ex. D at 2. It does not give a specific date. If the "walling off memo" was emailed to Attorney-1, the email should have a specific date. If the government cannot say specifically when she received it, the likely reason is that it has the "walling off memo" but no record that it was sent. Further, Attorney-1 told the government's agents that [redacted] ECF 83-3 at 2; ECF 83-4 at 2. The "walling off memo," and whatever transmitted it, would settle the question.

Shafi "should not have to rely solely on the government's word that further

discovery is unnecessary," and a court "should not merely defer to government assertions that discovery would be fruitless." *United States v. Soto-Zuniga*, 837 F.3d 992, 1002 (9th Cir. 2016) (quoting *United States v. Budziak*, 697 F.3d 1105, 1113 (9th Cir. 2012)); *Budziak*, 697 F.3d at 1112-13. That is true in every case. It is especially true where the government's descriptions of the record have been proven wrong each time the record has surfaced.

When the government withholds a document while making factual representations inconsistent with it, the remedy is to order the disclosure and give the defense time to use it. *United States v. Gamez-Orduno*, 235 F.3d 453, 461 (9th Cir. 2000) ("The suppression of material evidence helpful to the accused, whether at trial or on a motion to suppress, violates due process if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different."). Rule 16 reaches material needed for a pretrial motion, and *Brady* applies before trial, "at a time when the disclosure would be of value to the accused." *Id.* at 461. The government's own statement of the test decides this one. Pretrial evidence, it says, is favorable if it "undermines a factual assertion of the government." ECF 89 at 5 (citing *Gamez-Orduno*, 235 F.3d at 461). The government told the Court the recusal began the day Attorney-1 arrived. ECF 60 at 5:6-8. Its own "walling off memo" says two months later, Ex. D at 2, and Attorney-1 says [redacted] ECF 83-3 at 2. Under the government's own test, the "walling off memo" is favorable evidence, and Shafi is entitled to it.

## III. The Government Cannot Argue from the Records *and* Hide Them

The government did not merely oppose Shafi's Motion to Dismiss. It told the Court, as fact, what the Office did about Attorney-1's conflict. It said the Office "recused Attorney 1 from the matter immediately." ECF 79 at 6. It said, "Attorney 1 was recused from the matter from the date she joined the Office, and remained recused for her entire tenure." *Id*. at 16. It said, "[a]t every step the Office has acted in accordance with its ethical duties and will continue to do so." *Id*. at 19. It said, "appropriate screening steps were taken." *Id*. at 24. It said, "the diligence displayed by the Office in handling Shafi's concern demonstrates the opposite" of partiality. *Id*. at 26. It said that Shafi's account, by contrast, "is not true; it is

rather riddled with serious factual errors." *Id*. at 20. Part II of this brief shows what those statements are worth.

The Application does the same thing with the documents it is withholding. It tells the Court they "support finding that Attorney-1 did not engage in the substance of the IRL investigation" and that "Shafi's allegations of a pervasive misconduct by the Office are unfounded." ECF 89 at 3. It says they "undercut Shafi's theory." *Id*. at 6. It says none of them "involve any client confidential information being passed." *Id*. at 8.

Those are arguments from the contents of the documents. They are also the government's characterizations, and the Court should not rely on them.

The government put the propriety of its own conduct at issue and vouched for the result. It cannot now withhold the records that would test its claims. The privilege "may not be used both as a sword and a shield," and "[w]here a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." *Chevron Corp. v. Pennzoil Co*., 974 F.2d 1156, 1162 (9th Cir. 1992); *see United States v. Sanmina Corp*., 968 F.3d 1107, 1117 (9th Cir. 2020) (implied waiver rests on a "fairness principle"). Disclosing part of a subject waives the privilege "as to all other communications on the same subject." *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010).

The Ninth Circuit gives a litigant in the government's position a choice: "If you want to litigate this claim, then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to defend against it." *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003) (en banc). The government may withdraw its representations about how the Office handled the conflict. It may not make them *and* withhold the records of the handling.

The government's opposition rests on one factual premise: that a screen was in place from the day Attorney-1 arrived, and that it held. The withheld records could prove or disprove that premise. The government's own letter has already disproved half of it. The "walling off memo" was allegedly provided to Attorney-1 in February 2024, two months after she arrived. Ex. D at 2.

The government's disclosures have also been selective. It produced three Attorney-1

emails it believes serve its opposition, and will not say whether others exist. It produced an interview memorandum in which Attorney-1 describes her tracker but withholds the tracker. *See* ECF 83-3 (Attorney-1 interview memorandum). It produced an interview memorandum of the Branch Chief that omits any reference to his letter to GCO, and then, after the defense asked, produced agents' notes that reveal, for the first time, that he sent a letter to GCO that the government is also withholding. *See* ECF 83-4 (interview memorandum); Ex. E (agent's interview notes). The government should not get to narrate a document through its own summary and then withhold the document.

## IV. No Privilege the Government Has Named Covers Records of a Screen

The Application invokes the attorney-client privilege, the deliberative process privilege, the work product doctrine, and Rule 16(a)(2). ECF 89 at 4-6. The redacted version available to Shafi does not say which doctrine covers which document. *See* Ex. A. But before the Application, the government described the records Shafi requested as "privileged and internal work product" (August 27 email), then as "legal advice the office may have sought and received" and "documents related to the management of a section" (September 14 email), then as "attorney advice protected by the attorney-client privilege" (September 21 letter). Ex. C at 7-8, 13-14; Ex. D at 3. Different documents may call for different doctrines. But without a log, Shafi cannot tell which privilege attaches to which record, and the Court cannot test any of them. None of the four invoked protects records of a screen.

### *A. Attorney-Client Privilege*

The attorney-client privilege protects confidential communications "between the client and lawyer for the purpose of obtaining legal advice." *United States v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002). It turns on how a communication "actually operates," not how it is "labeled." *Greer v. County of San Diego*, 127 F.4th 1216, 1225 (9th Cir. 2025). And it "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981).

When the screen went up, who imposed it, on whom, what it prohibited, who was

told, and whether it held are facts that should not be protected. The recipient was the person being screened. She was not a client seeking counsel. That the GCO "prepared" the "walling off memo" "for the Office," Ex. D at 2, does not change what it is. Especially when the government's chronology about GCO's involvement does not make sense.

Shafi's prior counsel sent its letter to the government expressing concern about the conflict issue on May 16, 2024. ECF 64, Ex. O at 1. The government's letter says, "after receiving the letter from prior counsel expressing Shafi's concerns . . . the Office consulted with DOJ's General Counsel ('GCO') regarding the matter." Ex. D at 2. But the government says GCO prepared a "walling off memo" that was delivered "in or about February 2024," which is three months before the government said it consulted with GCO. Ex. D at 2. The government has created ambiguities that a privilege log could have resolved and that cast doubt on its privilege claims.

Whoever drafted it and when, a memorandum telling a lawyer to stay out of a case is the screen. It is what the California Rules call the "imposition of procedures" that makes a lawyer "screened." Cal. R. Prof. Conduct 1.0.1(k). The federal ethics regulation describes recusal the same way, and it expects a record: recusal "is accomplished by not participating in the matter," and written notice "to an agency ethics official, coworkers, or a supervisor" serves "to document and help effectuate the recusal." 5 C.F.R. § 2635.502(e), (e)(1). In *Fieger*, the government itself "recognize[d] that the final decision to recuse is not legal advice." 2008 WL 205244, at *15.

Offices write screening memoranda to be shown to the people who must follow them. California courts instruct that, "to establish an evidentiary record" of a screen, "a memorandum should be circulated warning the legal staff to isolate the individual from communications on the matter and to prevent access to the relevant files." *In re Complex Asbestos Litig*., 232 Cal. App. 3d 572, 594 (1991). When a screen is challenged, courts read the memorandum and rule on its terms in public. *E.g.*, *Kirk* v. *First Am. Title Ins. Co*., 183 Cal. App. 4th 776, 788, 810 (2010) (quoting the firm's screening memorandum and holding that "it is not sufficient to simply produce declarations stating that confidential information

was not conveyed or that the disqualified attorney did not work on the case”).

We have found no decision holding a screening memorandum privileged. The portion of the Application we can read cites none. And whatever privilege might otherwise attach to the Office’s communications, the government waived it when it told the Court that what the Office did was proper and sufficient. *See supra* Section III.

*B. Deliberative Process Privilege*

The deliberative process privilege protects communications that are “predecisional” and “deliberative,” meaning opinions and recommendations “about agency policies.” *United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000). Shafi is not asking for the Office’s debate. He is asking for the results of its decisions: the screen it says it imposed, the reassignment it says it made, and the communications that show whether the screen held. Those are not deliberations. If the government means that Attorney-1’s own communications with the case team reveal a “deliberative process,” that proves Shafi’s point. Deliberating about a case from which you are recused is prohibited.

The privilege is also qualified. It yields when a litigant’s need and “the need for accurate fact-finding” outweigh the government’s interest in secrecy, and the factors include “the government’s role in the litigation.” *FTC v. Warner Commc’ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). The privilege is “routinely denied” where “there is reason to believe the documents sought may shed light on government misconduct,” because shielding deliberations in that setting does not serve “the public’s interest in honest, effective government.” *In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997) (quoting *Texaco Puerto Rico, Inc. v. Dep’t of Consumer Affairs*, 60 F.3d 867, 885 (1st Cir. 1995)); *accord Fieger*, 2008 WL 205244, at *14 (rejecting the Department’s argument that disclosing the reason for a recusal would chill candor about conflicts). “The generalized assertion of privilege must yield to the demonstrated, specific need for evidence in a pending criminal trial.” *United States v. Nixon*, 418 U.S. 683, 713 (1974). The need here is a pending motion these records would help decide.

*C. Work Product and Rule 16(a)(2)*

Work product protects material prepared because of the prospect of litigation, and it does not apply where nothing shows the author "would have prepared the [document] differently in the absence of prospective litigation." *United States v. Richey*, 632 F.3d 559, 568 (9th Cir. 2011). Screening memoranda, ethics correspondence, personnel reassignments, and a section chief's caseload tracker are how an office runs itself. They would exist whether or not anyone was ever prosecuted.

Rule 16(a)(2) is narrower still. It covers internal documents made "in connection with investigating or prosecuting the case." It says only that Rule 16 "does not authorize" their discovery. It does not forbid it. Records of a screen investigate and prosecute no one.

Neither doctrine circumvents *Brady*: a prosecutor's opinions are protected "unless they contain underlying exculpatory facts." *United States v. Kohring*, 637 F.3d 895, 907 (9th Cir. 2011) (the government's citation). Whether a screen existed on the date the government said it did is an exculpatory fact. So is what the tracker recorded about this investigation, and when. *Fieger* rejected the government's same Rule 16(a)(2) argument for the same reason: discovery for a pretrial constitutional claim "is not cabined by Rule 16." 2008 WL 205244, at *12.

Applied to the records Shafi has requested, the point is short. Attorney-1's communications with the case team are the "participation" Rule 1.11(d) prohibits, and no doctrine makes them privileged. The Court should order production of every one relating to the Shafi matter, with a description of the search the government ran: custodians, accounts, date range, and terms. Attorney-1's case tracker is a list of the section's cases and who is working on them. *See* ECF 83-3 at 2. Attorney-1 has already described it to the government's agents, and the government produced that description. *Id*. Entries about other matters can be redacted. We proposed the government do that on August 21. Ex. C at 16.

## V. The Government's "No Prejudice" Argument Is Wrong on the Law and Wrong on the Facts

The Application argues that the records cannot help Shafi because he cannot show prejudice, and because Attorney-1 left the Office before the charges were brought. ECF 89

at 6-8. That argument decides the Motion to Dismiss in order to deny the discovery for it. It fails for five reasons.

*First*, the law does not require what the government says it requires. *Williams* sets a two-part test: a strong factual predicate, and a showing that continued representation "will result in a legal or ethical violation." *United States v. Williams*, 68 F.4th 564, 573 (9th Cir. 2023). On prejudice, the Ninth Circuit's rule is disjunctive: a defendant "must demonstrate prejudice from [a] prosecutor's potential conflict of interest" or present "clear and convincing evidence of prosecutorial misconduct." *Id*. (quoting *United States v. Kahre*, 737 F.3d 554, 574-75 (9th Cir. 2013)). Attorney-1's emails are documentary evidence of a Rule 1.11(d) violation.

The Supreme Court has also explained why prejudice is the wrong lens for an interested prosecutor. The harm is to the integrity of the proceeding itself, and a plurality concluded that harmless error analysis does not apply at all. *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 809-14 (1987). The government must "wield its formidable criminal enforcement powers in a rigorously disinterested fashion." *Id*. at 810. "A scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision." *Marshall v. Jerrico, Inc*., 446 U.S. 238, 249-50 (1980). The federal ethics regulation makes the same judgment. When a new employee is assigned to an investigation of the firm she just left, the concern is "the integrity of the investigation," and the government's interest in her participation may not overcome it. 5 C.F.R. § 2635.502(d), Example 2.

*Second*, supervision is "participation," and the government has never said what eight months of it consisted of. The government concedes that Attorney-1 "did initially supervise AUSA 1," one of the two line prosecutors on this case, from December 2023 until August 2024. ECF 79 at 15; ECF 80 ¶¶ 6-7. Under the federal ethics rules, to participate "personally" in a matter "includes the direct and active supervision of the participation of a subordinate in the matter." 5 C.F.R. § 2635.402(b)(4). The government's only answer is that the two never discussed "the substance of the investigation." ECF 79 at 15; ECF 80 ¶ 9. It

has never said whether Attorney-1 evaluated AUSA-1's performance, set her assignments, approved her leave, reviewed her workload, or asked for status updates.

The record shows Attorney-1 did some of this. Attorney-1 told the agents [redacted] ECF 83-3 at 2. The opposition concedes she "could have limited discussions on staffing and bandwidth" of prosecutors working on matters from which she was recused. ECF 79 at 16. For eight months the lead prosecutor on this case reported to the alleged victim's former lawyer. The government has told the Court what they did not talk about. It has never told the Court what they did.

*Third*, the government's argument about future violations fails on its own terms. It says no future violation is possible because Attorney-1 left the Office before the charges were brought. ECF 89 at 7. But the violation that continues is the Office's. California Rule 5.1(c) makes a lawyer with managerial authority responsible for another lawyer's violation when she "knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action." The Office knew of Attorney-1's conduct in January and February 2024. ECF 79, Exs. 6-8. It has never recused. Each day it prosecutes this case is a day it declines the remedial step the Rule requires.

The Ninth Circuit has excused a conflicted prosecutor's misconduct only where "the Department of Justice took every step it could reasonably have been expected to take to cleanse the . . . prosecution of any possible taint," beginning with recusal of the entire office the day the conflict was disclosed. *United States v. Miller*, 953 F.3d 1095, 1105 (9th Cir. 2020). This Office took no structural step for eight months, and then acted only because Shafi's counsel wrote to it. *See* ECF 79 at 20. In *Fieger*, the court found it significant that the office's leaders "did not immediately recuse themselves," and that "[d]uring that seven month period, the case investigation was ongoing, including grand jury proceedings." 2008 WL 205244, at *16. Seven months was reason enough to order the Department to explain itself. Here the delay was eight.

*Fourth*, there was prejudice. Attorney-1 was Shafi's adversary before she was his

prosecutors' supervisor. *See* ECF 64 at 3, 8. As counsel to the Special Committee, retained over Shafi's objection, she ran the investigation that removed him as CEO, collected his phone, and advised the dissolution of his company. ECF 64 at 9-14. She urged the SEC to "focus its efforts" on Shafi and to coordinate its case with the Department's. ECF 64, Ex. J at 3, 7-8. The investor directors she advised are the defendants in the fiduciary duty action Shafi filed in Delaware three weeks before she joined the Office, and her own conduct is alleged in the amended complaint filed while she ran the Section. *See* ECF 64, Exs. G, L. SoftBank, whose representative sat on that committee, is suing Shafi in this District, before this Court, and Shafi has sued back. *SVF II Aggregator (DE) LLC v. Shafi*, No. 4:23-cv-03834-YGR; *see* ECF 9 (related case order). Those cases are pending.

Every day of this prosecution, Attorney-1's former clients remain Shafi's litigation opponents. From inside the Office, that lawyer sent the case team press coverage asking whether IRL was a fraud, asked for the agents' names and offered her assessment of the lead agent, and asked to add a prosecutor "to help move it along." ECF 79, Exs. 6-8. The prosecutor Attorney-1 communicated with AUSA-2, Attorney-1's predecessor as Section Chief, and one of the two lawyers who opened this investigation. ECF 83-4 at 1; ECF 83-3 at 2. The government told the Court that "[n]o new staffing was added to the case." ECF 79 at 25. But, in April 2026, the United States Attorney copied AUSA-2 on correspondence with us about this case. Ex. B at 2. In May 2026, AUSA-2 sat in the meeting at which we asked the United States Attorney to dismiss it. Fee Decl. ¶ 3. Whatever his formal designation, the prosecutor Attorney-1 wanted on the team was in the room when we asked the Office to let this case go.

The government also says Attorney-1's influence could not have lasted because the Fraud Section approved the charges. ECF 89 at 8. But the Fraud Section approved charges built on evidence Attorney-1 gathered. *See* ECF 64 at 17-19. Approval by a second office of the same Department, seven months after Attorney-1 left, says nothing about the twenty months between her arrival and the Indictment.

*Fifth*, there is the question the government has never asked. Why did she do it? Why

did a lawyer who had run an SEC regional office, two months into a job that required her to stay out of this case, write to the Branch Chief to speed it up? The government interviewed Attorney-1 in July 2026 and asked her nothing about the words, her desire, "to help move it along." *See* ECF 83-3. It has not interviewed AUSA-2; members of the trial team "talked to" him, took no notes, and made no record. Ex. C at 8 (Sept. 14 email). By insisting that no one was prejudiced, the government has put Attorney-1's motive at issue. The withheld records are the only contemporaneous evidence of how the Office answered that question at the time.

## VI. Process Matters

Attorney-1 represented the alleged victim, was barred by state and federal law from touching this case, and supervised and pushed it forward anyway. None of that matters, the government says. It says the Office that employed Attorney-1 should be trusted to say so, and the Court should accept it on a filing the defense cannot read.

The guarantee of a disinterested prosecutor does not depend on whether Abraham Shafi is guilty. He is not. But that right belongs to every defendant. *Berger v. United States*, 295 U.S. 78, 88 (1935) ("The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done."). The record so far shows no screen when Attorney-1 arrived, no ethics briefing, no written warning until her third email to the case team, no reassignment of the lead AUSA under her supervision for eight months, and a "walling off memo" dated after at least two of the breaches had already occurred. It shows an Office that disclosed the breaches only when Shafi's motion forced it to, told this Court things its own files contradict, and has corrected none of them.

The Ninth Circuit weighs "the government's willfulness in committing the misconduct and its willingness to own up to it," and has treated the failure to own up as "more serious still." *United States v. Kojayan*, 8 F.3d 1315, 1318, 1325 (9th Cir. 1993). When the government recklessly disregards its disclosure obligations and misstates the

record to the court, dismissal is within the Court's power. *United States v. Chapman*, 524 F.3d 1073, 1085 (9th Cir. 2008) ("A district court may exercise its supervisory power to implement a remedy for the violation of a recognized statutory or constitutional right; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and to deter future illegal conduct.") (citation and quotation marks omitted). No system inside the Office caught these failures. Shafi did.

We have found no case like this one. Other offices tend to recuse on their own volition before it becomes an issue. In *Minkkinen*, the conflicted lawyer became the United States Attorney after the case was charged, the office recused itself, and the court removed the one prosecutor who remained. *United States v. Minkkinen*, 2023 WL 3587757, at *1-3 (S.D. W. Va. May 22, 2023). In *Miller*, the office recused itself the day the conflicted prosecutor disclosed his interest. 953 F.3d at 1101, 1105. In *Fieger*, when the Department recused the office's leadership alone, the court ordered it to disclose to the defense the reason why. 2008 WL 205244, at *16.

Here the Office kept the case, kept Attorney-1 in place for fifteen months, and now asks to keep the rest of its screening files hidden. There is no longer a reasonable dispute that Attorney-1 participated in this matter when the rules barred her from it, or that the Office took no structural step to stop her continued supervision of AUSA-1 for seven months after the government knew that had happened. What remains in dispute is how much more the records show. The government should not be the one to decide that.

## VII. Requests

Shafi asks that the Court:

1. Deny the Application.

2. Order the government to produce within three days: (a) the February 2024 "walling off memo" and whatever transmitted it; (b) all communications between Attorney-1 and any Office or Department personnel concerning this investigation, with a description of the search the government performed to locate them; (c) the entries of Attorney-1's tracker concerning this investigation; (d) the records of AUSA-1's reassignment and of the

second line prosecutor's assignment; (e) the Branch Chief's letter to GCO and any response; and (f) the documents the government submitted to the Court *in camera* with its Application.

3. For any document the Court finds privileged after *in camera* review, order disclosure of the non-privileged facts it records: when the screen was imposed, by whom, on whom, and what conduct it barred.

4. Direct the government to state in a filing whether it stands by the statements it made to the Court on June 11, 2026, and, if not, to correct them.

5. Hear argument on October 5 as scheduled, and set an evidentiary hearing after that date, with testimony from Attorney-1, the Branch Chief, EAUSA-1, AUSA-1, and AUSA-2, on when the screen was imposed, what it required, what the eight months of supervision consisted of, and what the Office knew and did after the February 2024 emails.

DATED: September 27, 2026

Adam Fee
Ben Nicholson

WEIL, GOTSHAL & MANGES LLP

By: *A. Fee*
ADAM FEE

Attorneys for Abraham Shafi